UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN THOMAS MATHEIS, CDCR #AM7358,<br><br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>CDCR, SGT. C. GODINEZ, SGT. L.J. RODRIGUEZ, WARDEN M. POLLARD, LT. R. CALVERT, SECRETARY OF CDCR,<br><br>　　　　　　　　　Defendants. | Case No.: 3:20-cv-02100-GPC-AHG<br><br>**ORDER:**<br><br>**1) GRANTING LEAVE TO FILE EXCESS PAGES [ECF No. 2];**<br><br>**2) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 3];**<br><br>**3) DIRECTING U.S. MARSHAL TO EFFECT SERVICE UPON DEFENDANTS PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

　　　Brian Thomas Matheis ("Plaintiff" or "Matheis"), currently incarcerated at R.J. Donavon State Prison ("RJD") located in San Diego, California, and proceeding pro se, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. *See* Compl., ECF No. 1. Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a), but did file an IFP motion pursuant to 28 U.S.C. § 1915(a). *See* ECF No. 3.

/ / /

## I. Motion for Leave to File Excess Pages

Plaintiff has filed a Motion for Leave to File Excess Pages [ECF No. 2], which the Court **GRANTS**.

## II. Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402. *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). However, prisoners who are granted leave to proceed IFP remain obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether their action is ultimately dismissed. See 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).[1]

Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no

---

[1] For civil cases like this one, filed before December 1, 2020, the civil litigant bringing suit must pay the $350 statutory fee in addition to a $50 administrative fee. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June. 1, 2016). The $50 administrative fee does not apply to persons granted leave to proceed IFP, however. *Id*. This administrative fee increased to $52 for civil cases filed on or after December 1, 2020, but that portion still does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020).

assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a copy of his CDCR Inmate Statement Report as well as a Prison Certificate completed by an RJD accounting officer. *See* ECF Nos. 3-4; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show that Plaintiff has carried an average monthly balance of $60.78, had $85.53 in average monthly deposits to his account over the 6-month period immediately preceding the filing of his Complaint and had an available balance of $0.15 on the books at the time of filing. *See* ECF No. 1 at 1-3. Based on this accounting, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 3) and assesses an initial partial filing fee of $17.10 pursuant to 28 U.S.C. § 1915(b)(1). The Court further directs the Secretary for the CDCR, or their designee, to collect this initial filing fee only if sufficient funds are available in Plaintiff's account at the time this Order is executed. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered."). The remaining balance of the $350 total fee owed in this case must be collected by the agency having custody of the prisoner and forwarded to the Clerk of the Court pursuant to 28 U.S.C. § 1915(b)(2).

///
///
///

**III.     Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

   A.     Standard of Review

Because Matheis is a prisoner, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

/ / /

B.     Plaintiff's Factual Allegations

Matheis alleges that on September 21, 2019, Defendant Godinez arrived at his cell to interview him about a grievance he had filed regarding missing property. Compl. at 4. According to Matheis, Godinez told him he needed to search the cell first and told Matheis's cellmate to leave. *Id.* Once Plaintiff's cellmate was gone, Godinez ordered him to strip his clothes off, squat and cough several times and then forced Plaintiff to masturbate in front of him. *Id.* When Plaintiff tried to stop, Godinez told him "not to stop until he said so or he was going to assault me and take me to [Administrative Segregation] (the hole)." *Id.*[2] Plaintiff was very frightened and began to cry, at which point Godinez allegedly directed Matheis to "insert his right pinky finger inside [his] pee hole," causing Plaintiff "extreme pain" and bleeding. *Id.* Despite this, Godinez continued to direct him to insert his finger into his penis deeper, eventually laughing at Plaintiff and telling him to get dressed and exit the cell. *Id.* After Plaintiff left his cell, he sat at a table at the base of the stairs. *Id.* He was frightened, crying, and in significant pain from the assault. *Id.* While he was sitting at the table, Godinez came over to where Plaintiff was seated and showed him some nails he claimed he found in Plaintiff's cell. *Id.* Godinez then told him he needed to withdraw his property grievance or Godinez would falsely accuse Plaintiff of having he nails in his cell and take him to Administrative Segregation ("AD-SEG"). *Id.* Godinez then told Plaintiff what to write on the grievance form and forged Defendant Rodriguez's name on the portion of the form indicating a first level interview had occurred. Godinez then put the nails in his pocket and walked away. *Id.*[3]

On January 11, 2020, two correctional officers came to Matheis's cell, strip searched him, put him in handcuffs, took him to an isolation cell and removed his cuffs. *Id.* at 6.

---

[2] Plaintiff has included a sworn declaration by a fellow inmate, R. Miller, who heard Godinez's sexual assault on Plaintiff. *See* Exh. to Compl., ECF No. 5 at 7.

[3] Plaintiff has included a sworn declaration by a fellow inmate, Rafael Pena, who heard Godinez's comments and threats about the grievance. *See* Exh. to Compl., ECF No. 5 at 6.

Plaintiff claims Defendant Godinez then appeared and ordered him to strip his clothes off. *Id.* When Matheis told Godinez he had been strip searched just before being placed in the cell, Godinez told Plaintiff that if he did not comply he would be taken to AD-SEG. *Id.* Plaintiff did as he was told, and Godinez again ordered Plaintiff to masturbate in front of him. *Id.* Plaintiff began to comply and cry, then stopped and told Godinez he was not going to let him sexually assault him again. *Id.* Godinez then laughed and left. *Id.* Plaintiff returned to his cell and found that more property was either missing or was outside of his cell "on the tier." *Id.*

Matheis filed a grievance about his missing property, and an interview with Defendant Rodriguez was scheduled for January 30, 2020. *Id.* When Plaintiff explained to Rodriguez that it was the second time Godinez had taken his property without documenting it with a receipt, Rodriguez backdated a receipt for the property, handed it to Plaintiff and asked him if he was happy now. *Id.* Plaintiff told Rodriguez "no" but Rodriguez refused to assist Matheis in recovering his property. *Id.* at 7. Plaintiff then told Rodriguez about Godinez's sexual assault. *Id.* at 8. According to Matheis, after Plaintiff told his story Rodriguez said, "Sgt. Godinez made you do all of that to yourself? Fucking Godinez! I'll talk to him." *Id.* When Plaintiff insisted Rodriguez file a report about the assault. Rodriguez said, "No, no, I'll talk to him personally." *Id.* Plaintiff was then returned to his cell. *Id.*

On February 16, 2020, Plaintiff was performing his duties as Housing Unit Clerk when Defendant Godinez came into the housing unit and "stared [him] down in a very threatening way." *Id.* at 9. Godinez then grabbed a box Matheis was using to store documents for his job, dumped all of the documents on the floor then kicked the box's contents around the room. *Id.* The next day, Godinez came into the housing unit again where Plaintiff was helping to serve food. *Id.* Godinez "star[ed] at him like a predator," then simulated masturbation at Plaintiff "while continuing to stare at [him] like he was

///
///
///

going to physically harm [him]." *Id.* As a result of Godinez's actions, Plaintiff was "completely frozen with fear and a deep sense of helplessness." *Id.*[4]

Plaintiff reported Godinez's sexual abuse to mental health professionals at RJD and they filed a Prison Rape Elimination Act ("PREA") form for him. *Id.* Plaintiff is now in mental health care at RJD as a result Defendant Godinez's sexual assault. *Id.* Matheis claims that "three to five more inmates have come forward with similar sexual abuse encounters suffered by the hands of Godinez" since he has come forward, and that Godinez is on leave from the institution for assaulting a fellow officer. *Id.*

In addition to the above, Plaintiff claims Godinez entered false and confidential information into Plaintiff's C-file on March 6, 2020 in retaliation for Plaintiff's reporting on Godinez's actions. *Id.* at 10. Plaintiff states that in November of 2019, immediately after Godinez's sexual assault, he began making plans to be transferred out of RJD due to his fear of Godinez. *Id.* According to Plaintiff, however, his transfer has been prevented by the false information Godinez inserted into his C-file. *Id.* Plaintiff states he has been told that he will not be transferred "until the confidential information gets fixed by the author or another correctional counselor holding the rank of CCII or above." *Id.*

Plaintiff states he filed an emergency appeal alleging "staff misconduct and staff sexually abusing Plaintiff" on February 10, 2020. *Id*. at 11. According to Plaintiff, no action was taken on the appeal until March 4, 2020, which he states is in violation of CDCR regulations. *Id*. Further, Plaintiff says he received an appeal assignment notice and a memorandum regarding his original complaint on the same day, March 4, 2020. *Id*. Defendants Calvert and Pollard both signed the March 4, 2020 memorandum. *Id.* Plaintiff claims these documents are "forged and fals[e]." *Id.* Plaintiff also contends the grievance he sent to the Chief Office of Appeals in Sacramento was not handled properly and in

///

---

[4] Plaintiff has included five sworn declarations by fellow inmates who witnessed Godinez's behavior. *See* Exh. to Compl., ECF No. 5 at 28-32.

compliance with applicable regulations. *Id.* at 12. More importantly, Plaintiff alleges that the Chief Office of Appeals is "refusing to exhaust Plaintiff's administrative remedies." *Id.*

C. 42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a Plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

D. Discussion

The Court finds Plaintiff's Complaint contains plausible Eighth and First Amendment claims sufficient to survive the "low threshold" set to withstand the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b) against Defendants Godinez, Rodriguez, Pollard, Calvert and Secretary of the CDCR, but not against Defendant CDCR.

1. Defendant Godinez

"The Eighth Amendment proscribes the infliction of cruel and unusual punishment on prisoners. Whether a particular event or condition in fact constitutes 'cruel and unusual punishment' is gauged against 'the evolving standards of decency that mark the progress of a maturing society.'" *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000) quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "[W]hen prison officials maliciously and sadistically use force to cause harm contemporary standards of decency are always violated." *Hudson*, 503 U.S at 9. A prisoner need not show any lasting physical injury. "Rather, the only requirement is that the officer's actions be 'offensive to human dignity.' Sexual assault on an inmate by a guard . . . is deeply 'offensive to human dignity.'" *Schwenk*, 204 F.3d at 1196, quoting *Felix v. McCarthy*, 939 F.2d 699, 702 (9th Cir. 1991).

Accordingly, the Court concludes Plaintiff's allegations against Defendant Godinez state a plausible Eighth Amendment cruel and unusual punishment claim. *See* Compl. at 4-6, 9.

Matheis also states a plausible First Amendment retaliation claim against Defendant Godinez. A retaliation claim requires a Plaintiff to assert: (1) a state actor took some adverse action against him, (2) the adverse action was taken because he engaged in some protected conduct, (3) the state actor's acts "would chill or silence a person of ordinary firmness from future First Amendment activities," and (4) the adverse action "did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (internal quotation marks and emphasis omitted). Matheis's allegations that Godinez forced him to retract his grievance regarding his lost property shortly after sexually assaulting him, threatened to further assault him if he did not retract it, and inserted false information into his C-file which prevented Matheis from being considered for transfer are sufficient to meet this requirement.

### 2. Defendant Rodriguez

Further, Plaintiff has stated a plausible Eighth Amendment failure to protect claim against Defendant Rodriguez. *Id.* at 6-8. "[T]he Eighth Amendment requires that prison officials 'must take reasonable measures to guarantee the safety of the inmates.'" *United States v. Williams*, 842 F.3d 1143, 1153 (9th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("[P]rison officials have a duty [under the Eighth Amendment] . . . to protect prisoners from violence at the hands of other prisoners.")). "[P]rison officials are . . . prohibited from being deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm." *Parsons v. Ryan*, 754 F.3d 657, 677 (9th Cir. 2014); *Farmer*, 511 U.S. at 841; *see Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012); *Iqbal*, 556 U.S. at 678; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) ("[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.") Matheis's allegation that Defendant Rodriguez refused to report Godinez's actions and told Matheis that he would "talk" to Godinez instead are sufficient to meet the screening standard.

### 3. Defendants Pollard, Calvert and Secretary of the CDCR

To the extent Plaintiff seeks declaratory and injunctive relief against Defendants Pollard, Calvert and the Secretary of the CDCR in their official capacities, *see* Compl., ECF No. 1 at 32-35, his Complaint also alleges cognizable Eighth Amendment claims against those defendants. *See* 28 U.S.C. § 1915A(a). "Suits against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dept. of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit against the state of California). An official-capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." *Graham*, 473 U.S. at 166.

A claim for prospective injunctive relief against a state official in his or her official capacity is not barred by the Eleventh Amendment provided the official has authority to implement the requested relief. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 92 (1989). Moreover, "[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (citing *Hafer*, 502 U.S. at 25; *Graham*, 473 U.S. at 166); *see also Rouser v. White*, 707 F. Supp. 2d 1055, 1066 (E.D. Cal. 2010) (proper defendant for injunctive relief in suit seeking implementation of CDCR policy is the CDCR Secretary in his official capacity). Instead, Plaintiff need only identify the law or policy challenged as a constitutional violation and name the official or officials within the entity who is or are alleged to have a "fairly direct" connection with the enforcement of that policy, *see Holmes v. Estock*, No. 3:16-CV-02458-MMA-BLM, 2018 WL 5840043, at *4 (S.D. Cal. Nov. 8, 2018) (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)), and can appropriately respond to injunctive relief. *Hartmann*, 707 F.3d at 1127 (citing *Los Angeles Cnty. v.*

*Humphries*, 526 U.S. 29, 35-37, 39; *Hafer*, 502 U.S. at 25); *Colwell*, 763 F.3d at 1071; *McQueen v. Brown*, No. 2:15-CV-2544-JAM-AC P, 2018 WL 1875631, at *4 (E.D. Cal. Apr. 19, 2018), report and recommendation adopted, No. 2:15-CV-2544-JAM-AC P, 2018 WL 2441713 (E.D. Cal. May 31, 2018).

Thus, while Plaintiff alleges no facts to suggest the Defendants Calvert, Pollard and the CDCR Secretary were personally involved in preventing his transfer from RJD, they would have the authority to "ensure execution of any order issued" in their official capacities as appeals coordinator, Warden and CDCR Secretary respectively. *Hartmann*, 707 F.3d at 1127. Therefore, the Court finds Plaintiff's Eighth Amendment official-capacity claims for declaratory and injunctive relief "are sufficient to meet the low threshold for proceeding past the screening stage," and are not subject to sua sponte dismissal pursuant to 28 U.S.C. § 1915A(b)(1) or (2). *See Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012); *Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) (finding Director of Nevada Department of Corrections was proper defendant in prisoner's Eighth Amendment inadequate medical care claims "'because he would be responsible for ensuring that injunctive relief was carried out, even if he was not personally involved in the decision giving rise to [the plaintiff's] claims.'") (quoting *Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012)).

### 4. Defendant "CDCR"

Plaintiff's claims against the CDCR, however, must be dismissed. The CDCR is not a "person" subject to suit under Section 1983 and it is entitled to immunity from suit for monetary damages under the Eleventh Amendment. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 53-54 (1996); *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) (citing *Hale v. Arizona*, 993 F.2d 1387, 1398-99 (9th Cir. 1993)); *see also Dragasits v. California*, No. 3:16-cv-01998-BEN-JLB, 2016 WL 680947, at *3 (S.D. Cal. Nov. 15, 2016) ("The State of California's Department of Corrections and Rehabilitation and any state prison, correctional agency, sub-division, or department under its jurisdiction, are not 'persons' subject to suit under § 1983." (citing *Groten*, 251 F.3d at 851)); *Bridgeman v. Education*

*Dep't*, No. 11-cv-0387-JLS-CAB, 2011 WL 2532413, at *1 (S.D. Cal. June 24, 2011) (dismissing claims against the "Education Department" and the "Law Library" of RJD because they are not "persons" and are immune from suit under the Eleventh Amendment). Accordingly, Plaintiff's claims against this Defendant are dismissed sua sponte for failure to state a plausible claim and for seeking monetary relief against an immune defendant. *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

## IV.  Conclusion and Order

Based on the foregoing, the Court:

1.  **GRANTS** Plaintiff's Motion to for Leave to File Excess Pages (ECF No. 2).

2.  **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 3).

3.  **ORDERS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

4.  **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

5.  **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (ECF No. 1) upon Defendants SGT. C. GODINEZ, SGT. L.J. RODRIGUEZ, WARDEN M. POLLARD, LT. R. CALVERT, SECRETARY OF CDCR, and forward them to Plaintiff along with a blank U.S. Marshal Form 285 for these Defendants. In addition, the Clerk will provide Plaintiff with certified copies of this Order, certified copies of his Complaint (ECF No. 1), and the summons so that he may serve Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the USM Form 285 as completely and accurately as possible, include an address where Defendants may be found and/or subject to service

pursuant to S.D. Cal. CivLR 4.1c., and return it to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

6. **ORDERS** the U.S. Marshal to serve a copy of the Complaint (ECF No. 1), and summons upon Defendants as directed by Plaintiff on the USM Form 285 provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

7. **ORDERS** Defendants, once they have been served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

8. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or if appearance has been entered by counsel, upon Defendants counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which

/ / /
/ / /
/ / /
/ / /
/ / /

1  fails to include a Certificate of Service upon the Defendants, or their counsel, may be
2  disregarded.
3     9.    **ORDERS** "CDCR" be dismissed as a Defendant in this case.
4     **IT IS SO ORDERED**.

6  Dated:  January 5, 2021

                                                  _____
                                                  Hon. Gonzalo P. Curiel
                                                  United States District Judge