UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN THOMAS MATHEIS,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>C. GODINEZ, *et al.*,<br><br>　　　　　　　　Defendants. | Case No.: 3:20-cv-2100-GPC-AHG<br><br>**ORDER:**<br><br>**(1) RECOMMENDING THE COURT DENY DEFENDANTS' MOTION FOR EVIDENTIARY SANCTIONS (ECF No. 68);**<br><br>**(2) DENYING PLAINTIFF'S MOTION TO APPOINT NEUTRAL EXPERTS (ECF No. 84); and**<br><br>**(3) DENYING AS MOOT PLAINTIFF'S MOTION TO EXTEND EXPERT DISCOVERY DEADLINES (ECF No. 110)** |

This matter comes before the Court on (1) Defendants' Motion for Evidentiary Sanctions ("Rule 37 Motion") (ECF No. 68); (2) Plaintiff's Motion for Appointment of Neutral Experts to Conduct I.M.E.s Pursuant to Federal Rule of Evidence 706(a) ("Rule 706 Motion") (ECF No. 84); and (3) Plaintiff's Request to Extend the Deadline for Naming Expert Witnesses (ECF No. 110) ("Motion to Extend").

In the Rule 37 Motion, Defendants seek preclusionary evidentiary sanctions against Plaintiff pursuant to Federal Rule of Civil Procedure 37, due to Plaintiff's failure to undergo a cystoscopy procedure as part of a Court-ordered and stipulated urological independent medical examination ("IME") under Rule 35. In the Rule 706 Motion, Plaintiff requests the Court appoint neutral experts to conduct the urological IME as well as a separate stipulated psychological IME, pursuant to Federal Rule of Evidence 706. After both the Rule 37 Motion and Rule 706 Motion were briefed, Plaintiff additionally filed a Motion requesting the Court extend the deadline for naming the appointed experts and disclosing the experts' reports. ECF No. 110. Because all three Motions are interrelated, the Court has chosen to address them together in the present Order.

Notably, with respect to Defendants' motion, whether evidence should be excluded at trial is ultimately a matter for the presiding District Judge to decide. However, the undersigned may consider the Rule 37 motion to determine whether Defendants have established a discovery violation that would warrant a recommendation to the District Judge to issue evidentiary sanctions. Additionally, or alternatively, if the Court finds such a violation, the undersigned may directly issue non-dispositive, lesser sanctions, or may otherwise recommend the District Judge impose any of the dispositive sanctions listed in Rule 37(b)(2)(A)(i)-(vi).

In contrast, the undersigned has the authority to directly determine whether the Court should exercise its discretion to appoint neutral experts under Federal Rule of Evidence 706, and whether the deadline for naming said experts and disclosure of their reports shall be extended. Therefore, those motions will be addressed by a direct ruling rather than a recommendation to the District Judge.

For the reasons explained more fully below, the undersigned (1) recommends that Defendants' Motion for Evidentiary Sanctions (ECF No. 68) be **DENIED**; (2) **DENIES** Plaintiff's Motion requesting the Court appoint neutral experts (ECF No. 84); and (3) **DENIES as moot** Plaintiff's Motion to extend the discovery deadlines regarding those experts (ECF No. 110).

## I.   BACKGROUND

Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983. Plaintiff filed this action on October 22, 2020, bringing First and Eighth Amendment claims against Defendants for retaliation, cruel and unusual punishment, and failure to protect. ECF No. 1. On January 5, 2021, the Court found Plaintiff's Complaint sufficiently stated First Amendment and Eighth Amendment claims. ECF No. 8.

Specifically, Plaintiff's allegations underlying her First and Eighth Amendment claims are as follows: Plaintiff alleges Defendant Godinez, a correctional officer at R.J. Donovan State Prison where Plaintiff is incarcerated, came to Plaintiff's cell to interview her about a grievance she filed regarding missing property.[1] ECF No. 1 at ¶ 4. Godinez told Plaintiff the cell needed to be searched and ordered Plaintiff's cellmate to leave. *Id*. Godinez then ordered Plaintiff to strip her clothes off, squat down, and masturbate in front of him. *Id*. Plaintiff alleges that when she tried to stop, Godinez "forcefully told [her] not to stop until he said to or he was going to assault her and take her to [Administrative Segregation], (the hole)." *Id*. Plaintiff became "extremely scared and started to cry." *Id*. At that point, Godinez allegedly told her to insert her pinky finger into her penis, causing Plaintiff "extreme pain." *Id*. Relevant to both parties' motions regarding the urological IME, Plaintiff alleges her fingernail cut the inside of [her] penis during the act, causing it to bleed. *Id*. Godinez directed Plaintiff to insert her finger even deeper, despite the

---

[1] Plaintiff is transgender and uses she/her pronouns.

bleeding. *Id*. Godinez then laughed at Plaintiff and directed her to get dressed and exit her cell. *Id*. In addition to the pain and abrasion on her penis, Plaintiff claims the physical injury Godinez forced her to inflict on herself caused pain when urinating and "severe impairment of [her] mental faculty." *Id*. at 5.

On July 27, 2021, Defendants took Plaintiff's deposition, wherein Plaintiff stated she continues to experience pain in her penis and burning while urinating. ECF No. 68-3 at 73:11-77:15. Plaintiff stated she has never received medical treatment for the injury to her penis, despite her request for it. *Id*. at 77:16-78:18. Plaintiff also testified to mental health issues caused by the assault. *Id*. at 217:10-24. Based on Plaintiff's statements, Defendants petitioned the Court to continue discovery deadlines in order to explore Plaintiff's damages claims through both a psychiatric and urological Independent Medical Examination ("IME"). ECF No. 49. Defendants retained urologist Tung-Chin Hsieh, M.D., to conduct the urological IME of Plaintiff. ECF No. 49. Dr. Hsieh advised Defendants that he would need to conduct a cystoscopy, also known as a cystourethroscopy, to examine the health of the urethra and bladder by a bladder scope test. Decl. of Alice Segal, ECF No. 49-1 at ¶ 6. Because the equipment for the cystoscopy could not be easily transported to the prison, Plaintiff needed to be transported to Dr. Hsieh's office in San Diego for the procedure. *Id*. Counsel for Defendants advised Plaintiff that Defendants would be requesting the Court order the IMEs, including the cystoscopy, to explore Plaintiff's liability and damages claims. *Id*. at 7. Plaintiff joined in a written stipulation to the two IMEs, stating in relevant part that she agreed her claims and allegations necessitated a urological examination by urologist Dr. Hsieh. ECF No. 50.

On October 5, 2021, the Court granted the parties' joint motion for the IMEs pursuant to Federal Rule of Civil Procedure 35. ECF No. 58. Per the parties' stipulation, the scope of the urological IME included a review of medical, counseling, and discovery records, a physical examination, and an investigation of Plaintiff's genitourinary complaints that she asserts were caused or exacerbated by the alleged sexual assault, including a cystoscopy/cystotheuroscapy. *Id*. at 2. On October 26, 2021, Plaintiff attended

the urological IME wherein Dr. Hsieh performed an external physical examination of Plaintiff's penis; however, Plaintiff refused to undergo the cystoscopy procedure. ECF No. 77.

On November 19, 2021, Defendants filed a Motion for Evidentiary Sanctions under Federal Rule of Civil Procedure 37, asking the Court to preclude Plaintiff from introducing evidence of internal injury to her penis due to her failure to comply with the Court's Order to undergo the cystoscopy procedure during the urological IME. ECF No. 68-1 at 1. Defendants argue evidentiary sanctions are appropriate because without the results of the cystoscopy procedure, Defendants are unable to evaluate Plaintiff's claims of liability and damages and have no way to dispute Plaintiff's claims of internal damage to her penis. ECF No. 68-1 at 5-6. Defendants also argue Plaintiff's refusal to undergo the cystoscopy was an act of willfulness and "clearly intentional" because she refused to undergo the procedure "after she agreed to the cystoscopy in conversations with Defense counsel and the Court ordered the procedure to proceed." ECF No. 68-1 at 7. Defense counsel asserts she explained the details of the cystoscopy procedure ahead of time, so any claim by Plaintiff that she was confused or did not understand what the procedure would entail supports Defendants' claim that Plaintiff's refusal to undergo the procedure was intentional and therefore evidence of the Plaintiff's willfulness. ECF No. 68-1 at 6-7.

In her Opposition to Defendants' Motion, Plaintiff states she did not undergo the cystoscopy because she was confused and did not understand a male doctor would be performing the procedure. ECF No. 77 at 2. Plaintiff is a transgender woman and has requested Defendants only allow female staff members to perform unclothed body searches and medical examinations on her. *Id*. Plaintiff states she was extremely apprehensive to talk about her injuries in front of two Correctional Officers and an unidentified male who were also present in the exam room. *Id*.

On January 4, 2022, while Defendants' Rule 37 Motion was pending, Plaintiff filed her Motion for Appointment of Neutral Experts to conduct a second round of IMEs pursuant to Federal Rule of Evidence 706(a). ECF No. 84. In the Rule 706 Motion, Plaintiff

argues the first set of IMEs were conducted by experts retained by the Defendants, making the exams adversarial, biased, and not neutral. *Id*. at 1. Plaintiff claims the IME conducted by Dr. Hsieh was "extremely biased." *Id*. Plaintiff further explains she cannot retain her own experts because she cannot afford them. *Id*. Thus, Plaintiff contends that if the Court does not appoint neutral experts, there will be a "one-sided presentation of the evidence, as presented from the defense[']s retained and biased expert opinions" because she will be unable to present "expert rebuttal testimony." ECF No. 84 at 3.

Relatedly, on February 7, 2022, Plaintiff also filed a Request to Extend the Deadline for Experts, asking the Court to extend the expert deadlines in the case schedule in light of her existing request that the Court appoint neutral experts to conduct a second round of IMEs. ECF No. 110 at 1. The Court will treat Plaintiff's request as supplemental to her Motion to Appoint Neutral Experts (ECF No. 84). ECF No. 111.

## II. PLAINTIFF'S MOTION TO APPOINT NEUTRAL EXPERTS TO CONDUCT IME

### a. Legal Standard

Federal Rule of Evidence 706 authorizes the Court to appoint a neutral expert witness according to the Court's discretion. Fed. R. Evid. 706(a); *Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999). Such an appointment is generally appropriate when "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or decide a fact in issue." *Brooks v. Tate*, No. 1:11-CV-01503, 2013 WL 4049043, at *1 (E.D. Cal. Aug 7, 2013) (citing *Ledford v. Sullivan*, 105 F.3d 354, 358-59 (7th Cir. 1997)); *see also* Fed. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify . . . if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . .").

"[R]ule 706 is not a means to avoid the *in forma pauperis* statute [28 U.S.C. § 1915] and its prohibition against using public funds to pay for the expenses of witnesses, nor does

Rule 706 contemplate court appointment and compensation of an expert witness as an advocate for [the] [p]laintiff." *Brooks*, 2013 WL 4049043 at *1; *see Tedder v. Odel*, 890 F.2d 210, 211–12 (9th Cir. 1989) (holding section 1915 does not authorize waiver of witness fees or expenses on behalf of an indigent litigant). Additionally, "[a]voiding bias or otherwise assisting one party is not the purpose of Rule 706." *Brooks*, 2013 WL 4049043 at *2.

### b. Discussion

In her Motion, Plaintiff requests the Court appoint neutral experts for two main reasons: (1) Plaintiff is unable to obtain her own experts because she cannot afford them, and (2) the IMEs Plaintiff already participated in were conducted by experts retained by Defendants, rendering the evidence from the IMEs "adversarial," and "not neutral or impartial." ECF No. 84 at 1. In specific regard to the physical examination conducted by Dr. Hsieh, Plaintiff contends the exam was "extremely biased." *Id*. at 25-26. In support of her argument, Plaintiff states in her Declaration that without court-appointed experts, the evidence presented of her injuries will be "one-sided," which will prejudice Plaintiff because she will not be able to present rebuttal expert testimony. ECF No. 84 at 3. In Plaintiff's Reply to Defendants' Opposition to the Motion, Plaintiff contends the "Court experts will be used to assist the Court or Jury in understanding the issue and injuries that [P]laintiff has already suffered and continues to suffer from." ECF No. 109 at 1.

Plaintiff has not stated a valid reason for the Court to appoint a neutral expert to conduct the IMEs, and thus the Court must deny the motion. First, Plaintiff is asking the Court to appoint an expert witness to advocate on Plaintiff's behalf. As noted above, Federal Rule of Evidence 706 does not authorize the Court to appoint a neutral expert to advocate for a plaintiff or avoid bias against a plaintiff. *Brooks*, 2013 WL 4049043 at *1. As an initial matter, Plaintiff points to no evidence to support her claim of bias. Nor does the record reflect any such evidence. The doctors who conducted the IMEs are not employed by the prison, the IMEs were conducted pursuant to a joint stipulation by the parties, and Plaintiff has seemingly complied fully with the psychological IME without any

disputes arising. Plaintiff presents only cursory argument that the experts are biased because they are defense witnesses. But the fact that the doctors who performed the first IMEs of Plaintiff are expert witnesses retained by Defendants does not justify the appointment of a neutral expert, even if Plaintiff **had** presented some evidence of bias. *See Carson v. Martinez*, No. 16-CV-1736-JLS (BLM), 2018 WL 4282599 at *3 (S.D. Cal. Sept. 6, 2018) (holding the fact that medical providers employed by the prison may be biased against the *pro se, in forma pauperis* prisoner plaintiff did not justify the appointment of an independent medical expert). Moreover, to the extent Plaintiff is concerned the Defendants' expert witnesses may be biased, Plaintiff may present evidence at trial by retaining her own expert witness or by cross-examination of Defendants' expert witnesses on the stand. *Id*.

Second, Plaintiff's inability to pay for experts is not a basis for the Court to appoint experts within its discretion under either Rule 706 or 28 U.S.C. § 1915. Rule 706 is not meant to be used to avoid section 1915's prohibition of the use of public funds to pay witness fees for indigent plaintiffs, nor does Rule 706 provide for the Court to appoint an expert and provide compensation in order for that expert to advocate on behalf of the plaintiff. *Brooks*, 2013 WL 4049043 at *1.

Lastly, Plaintiff has not adequately explained why an appointed medical expert is necessary to assist the Court in understanding Plaintiff's injuries and damages. Plaintiff has not shown her injuries are of such a complex nature that the trier of fact requires scientific, technical, or otherwise specialized knowledge regarding her injuries and damages.

For the foregoing reasons, Plaintiff's Motion for Appointment of Neutral Experts is **DENIED without prejudice**.[2]

---

[2] The Court denies the motion without prejudice, meaning that Plaintiff may petition the Court for the same relief at a later time should the circumstances warrant it.

### III. DEFENDANTS' MOTION FOR EVIDENTIARY SANCTIONS

#### a. Legal Standard

Federal district courts may issue sanctions for a party's noncompliance with discovery orders under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure and under their inherent powers. *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 49 n.14 (1991); *see also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (the district court's "two sources of authority" are its "inherent power to levy sanctions in response to abusive litigation practices" and Rule 37). One of the sanctions provided by Rule 37(b)(2)(A) is "prohibiting the disobedient party . . . from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii).

Under Rule 37(b)(2)(A), the Court may order sanctions against a party who "fails to obey an order or permit discovery, including an order under Rule [35]" to submit to a physical or mental examination. Fed. R. Civ. P. 37(b)(2)(A). A court exercises its discretion to determine which sanctions under Rule 37(b)(2)(A) to impose. *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 844 (9th Cir. 1976). A district court has wide discretion to issue sanctions in its control of discovery. *See Jeff D. v. Otter*, 643 F.3d 278, 289 (9th Cir. 2011).

Where the sanctions requested by a party are a dismissal or default judgment, the court must apply a five-factor test in its consideration of the sanctions. *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987) ("a district court must weigh five factors in determining whether to dismiss a case for failure to comply with a court order"). The Ninth Circuit has said the five-factor test only applies to dismissal or default judgment sanctions. *See Caesars World, Inc. v. Milanian*, 126 F. App'x 775, 777-78 (9th Cir. 2005). In some instances, preclusionary sanctions may be considered tantamount to a dismissal and thus subject to the same five-factor test, such as where the disobedient party is precluded from supporting or opposing designated claims or defenses. *U.S. for Use and Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc.*, 857 F.2d 600, 603 (9th Cir. 1988) (determining the requested sanctions as comparable to dismissal of the action because the sanctions "represent the most severe penalty that can be imposed on a party").

Here, the Court does not find the requested evidentiary sanctions are tantamount to dismissal, and therefore does not apply the five-factor test. The Ninth Circuit has established that "no lasting physical injury is necessary to state a cause of action for an Eighth Amendment violation arising from sexual assault" and "an inmate need not prove that an injury resulted from sexual assault to maintain [a] . . . claim under the Eighth Amendment." *Bearchild v. Cobban*, 947 F.3d 1130, 1143-44 (9th Cir. 2020). Therefore, precluding Plaintiff from presenting any evidence of physical injury to her penis would not be tantamount to dismissing her claim, because physical injury is not essential to Plaintiff's § 1983 claim that Defendant Godinez's purported sexual assault violated her Eighth Amendment right against cruel and usual punishment. The ultimate inquiry for an Eighth Amendment violation is whether the prison official acted with malicious and sadistic intent, which is satisfied by a showing of sexual assault; the law does not require a plaintiff to show a prison official's actions of sexual assault caused physical harm or lasting emotional injury. *Id*. at 1145. Because evidence of the extent of Plaintiff's injuries is not necessary for her to prevail on her claim, barring any evidence of injuries would not be tantamount to dismissal of her claim.

### b. Discussion

Even without applying the stringent five-factor test, the Court determines in its discretion not to impose the evidentiary sanctions sought by Defendants here. In reaching its conclusion, the Court has considered the general purposes of Rule 37(b) sanctions, and has determined that none of these purposes would be served by the sanctions Defendants seek. The three general purposes of Rule 37(b) sanctions are as follows:

> [1] Preclusionary orders ensure that a party will not be able to profit from its own failure to comply. [2] Rule 37 strictures are also specific deterrents, and, like civil contempt, they seek to secure compliance with the particular order at hand. [3] Finally, although the most drastic sanctions may not be imposed as "mere penalties," courts are free to consider the general deterrent effect their orders may have on the instant case and on other litigation, provided that the party on whom they are imposed is, in some sense, at fault.

*United States v. Sumitomo Marine & Fire Insurance Company, Ltd.*, 617 F.2d 1365, 1369 (9th Cir. 1980) (internal quotations omitted).

Precluding Plaintiff from claiming that she has suffered internal damages as a result of the alleged assault would not serve any of these purposes. First, Defendants argue they are prejudiced by Plaintiff's refusal to undergo the cystoscopy examination, because they are unable to evaluate Plaintiff's claims of liability and damages and have no way to dispute Plaintiff's claims of internal damage to her penis. However, to the extent Defendants have suffered any prejudice by Plaintiff's refusal to undergo the cystoscopy, such prejudice only affects Defendants' ability to attack Plaintiff's credibility by way of refuting her claims of internal injury. That is, had the procedure revealed no scar tissue or other malformities, Defendants could have offered the evidence to support an inference that Plaintiff is not telling the truth regarding the extent of her damages. But Plaintiff's refusal merely goes to the weight of her damages claims of internal injury, not to the admissibility of such claims. Defendants are not precluded from challenging Plaintiff's credibility with respect to the extent of her damages through cross-examination at trial, and her refusal to undergo the cystoscopy procedure may support the same inference she is not telling the truth. In arguing they will be prejudiced unless the Court grants preclusionary sanctions, Defendants heavily rely on the first purpose laid out above—i.e., Plaintiff refused to undergo the cystoscopy procedure to gain from her refusal. The Court disagrees. In fact, the opposite is true: Plaintiff's refusal to undergo the cystoscopy hurts her case more than it helps, because not only does she now have no physical evidence of the internal injuries she claims, but she has also opened the door for her credibility to be attacked by Defendants. Therefore, Defendants have not shown that they have been prejudiced by Plaintiff's non-compliance.

Defendants also argue they are unable to appropriately evaluate Plaintiff's damages claims without the cystoscopy procedure, and thus evidentiary sanctions are appropriate because Defendants have no way to dispute Plaintiff's claims. ECF No. 68-1 at 5-6. The Court should likewise reject this argument for the same reasons just explained. Plaintiff's refusal goes to the weight of her damages claims, not admissibility.

As to the second purpose of Rule 37(b) listed above, the sanctions Defendants seek are not related to specific deterrence because Defendants are not asking for Plaintiff to finish the incomplete IME by suggesting a different doctor or location for the cystoscopy procedure.

Lastly, sanctions in this instance would also not serve the third purpose listed above of general deterrence, because, unlike cases in which a party continually disobeys a court's authority, there is no showing here that Plaintiff's refusal to undergo the cystoscopy procedure was done willfully or in bad faith. Although Defendants contend that Plaintiff's non-compliance with the IME order was willful, the Court finds the evidence shows otherwise. Plaintiff was substantially compliant: she attended the urological IME and gave a plausible set of reasons why she did not proceed with the cystoscopy, specifically, that she did not understand a male doctor would be performing the exam and she was "extremely apprehensive" about discussing her injury in front of two correctional officers and another unidentified male who all remained present in the exam room. ECF No. 77 at 2. Moreover, Plaintiff fully complied with the psychological IME that was ordered by the Court at the same time. Given Plaintiff's voluntary stipulation to both IMEs, her partial compliance, her proffer of plausible non-willful reasons for refusing the cystoscopy procedure in particular, and the absence of any pattern of discovery misconduct on Plaintiff's part, the Court finds there is no evidence that Plaintiff's refusal was done in bad faith or that it otherwise warrants a strong response by the Court to deter Plaintiff from continuing down a path of non-compliance.

For the foregoing reasons, Defendants have not shown evidentiary sanctions are warranted here. Therefore, the undersigned recommends that Defendants' Motion for Evidentiary Sanctions be **DENIED without prejudice**.

### IV. CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' Motion for Evidentiary Sanctions (ECF No. 68) be **DENIED without prejudice**.

Further, the Court **DENIES without prejudice** Plaintiff's Motion to Appoint Neutral Experts (ECF No. 84), and **DENIES as moot** Plaintiff's Request to have the Court Extend the Deadline for Experts (ECF No. 110) moot.

**IT IS FURTHER ORDERED**, pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), that no later than **April 1, 2022**, any party to this action may file written objections to the undersigned's recommended ruling on Defendants' Motion for Evidentiary Sanctions (ECF No. 68). A copy of any such objections must be served on all parties. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be filed with the Court and served on all parties no later than **April 18, 2022**.

**IT IS SO ORDERED.**

Dated:  March 14, 2022

_____
Honorable Allison H. Goddard
United States Magistrate Judge